IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TARRISH TELLIS, | ) | |
| | ) | |
|    Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-CV-961-WHA-KFP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|    Respondent. | ) | |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

Before the Court is federal prisoner Tarrish Tellis's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Doc. 1.[1] For the reasons discussed below, the Magistrate Judge RECOMMENDS that Tellis's § 2255 Motion be DENIED without an evidentiary hearing and this action be DISMISSED with prejudice.

**I.   BACKGROUND**

In April 2013, a federal grand jury in the Middle District of Alabama returned an indictment charging Tellis with one count of conspiracy to defraud the IRS, in violation of 18 U.S.C. § 371; eleven counts of theft of public money, in violation of 18 U.S.C. § 641;

---

[1] References to document numbers of the pleadings, motions, and other materials in the Court file in this § 2255 action, as assigned on the docket sheet by the Clerk of Court, are designated as "Doc." References to document numbers assigned by the Clerk in the underlying criminal case (Case No. 2:13-CR-67-WHA) are designated as "Crim. Doc." Pinpoint citations are to the pages of the electronically filed documents in the Court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

and five counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A.[2] Crim. Doc. 1. Two weeks after Tellis's indictment, the Government contacted his lawyer, Richard White, to ask if Tellis would be interested in cooperating with the Government. In July 2013, a proffer session with Tellis was held at White's office. Crim. Doc. 212 at 3. At the proffer session, Tellis admitted his involvement in the tax-refund scheme and agreed to testify before a grand jury. On August 15, 2013, the Government emailed White a draft of a proposed plea agreement and requested that Tellis testify before the grand jury as part of his cooperation. On August 21, 2013, Tellis testified before the grand jury and admitted his involvement in the tax-refund scheme. *Id* at 4.

On October 24, 2013, under a written plea agreement negotiated for Tellis by White, Tellis pleaded guilty to Counts 1, 2, and 25 of the indictment—i.e., one count of each charged offense: conspiracy to defraud the IRS, theft of public money, and aggravated identity theft. Crim. Doc. 99. Sentencing was set for February 2014. Crim. Doc. 100.

In January 2014, White withdrew as Tellis's counsel, and attorney Daniel G. Hamm was appointed to represent Tellis. Crim. Doc. 116. On February 14, 2014, through new counsel Hamm, Tellis filed a motion to withdraw his guilty plea, alleging that White had provided ineffective assistance of counsel by, among other things, misleading him about the terms of his plea agreement. Crim. Doc. 132. The Government filed a response stating that, given Tellis's allegations and in an abundance of caution, it would not oppose Tellis's

---

[2] Tellis and four coconspirators were named in the 29-count indictment. Crim. Doc. 1. The conspiracy involved a large tax-refund scheme with the filing of fraudulent tax returns using personal identification information stolen from hundreds of people. Tellis was named in Counts 1–12 and 25–29 of the indictment. *Id.*

2

request to withdraw his guilty plea. Crim. Doc. 150. On March 29, 2014, the district court granted Tellis's motion to withdraw his guilty plea, finding that the motion should be granted "due to Defendant's proffered perception of the proceedings and the Government's acquiescence." Crim. Doc. 158.

After Tellis withdrew his guilty plea, the Government extended Tellis, still represented by Hamm, the same plea offer it had extended to him while he was represented by White. *See* Crim. Doc. 212 at 7. Tellis, however, rejected this offer and insisted on going to trial. *Id*.

Tellis's case came to trial on January 12, 2015. Crim. Doc. 230. On January 14, 2015, the jury returned verdicts finding Tellis guilty on all counts against him in the indictment, i.e., one count of conspiracy to defraud the IRS (Count 1), eleven counts of theft of public money (Counts 2–12), and five counts of aggravated identity theft (Counts 25–29). Crim. Doc. 283 at 51. On January 22, 2015, Tellis filed a motion for new trial asserting claims alleging deficient performance by attorney White during pretrial proceedings and in the negotiation of the guilty plea. Crim. Doc. 212. The trial court held a hearing on the motion on February 18, 2015, after which it found there was no basis for granting a new trial. Crim. Doc. 248. On April 15, 2015, the district court sentenced Tellis to a total of 223 months' imprisonment. Crim. Doc. 261. The court entered its judgment the following day. Doc. 6-1 at 3–8.

Tellis appealed to the Eleventh Circuit (Doc. 6-1 at 1–2), where his appellate counsel, Joseph Michell McGuire,[3] initially filed a no-merit "*Anders* brief"[4] stating he could find no meritorious issues for review. Docs. 6-2, 6-4. In October 2017, the Eleventh Circuit issued an order directing McGuire to file a merits brief on behalf of Tellis addressing what appeared to be a sentencing error—specifically, whether Tellis's concurrent sentence for Counts 1–12 of the indictment exceeded the maximum allowed by statute for each count. Doc. 6-7 at 1. McGuire drafted and filed a merits brief addressing the sentencing error. Doc. 6-8. On December 20, 2017, the Eleventh Circuit remanded Tellis's case to the district court to address the sentencing error and "ensure that the sentences are within the statutory maximum on each count." Crim. Doc. 310 at 1. The Eleventh Circuit's order indicated that Tellis's appeal was closed with entry of the order. *Id.* at 2. On January 24, 2018, the district court entering an order correcting Tellis's sentence and resentencing him to the same total of 223 months' imprisonment.[5] Doc. 6-9. Tellis did not petition the U.S. Supreme Court for a writ of certiorari.

---

[3] McGuire also represented Tellis at sentencing.

[4] *Anders v. California*, 386 U.S. 738 (1967).

[5] In its order correcting Tellis's sentence, the district court stated:

> The sentence originally imposed was 223 months. This sentence included a sentence within the correctly calculated advisory Guidelines range of 151 to 188 months for Counts 1 through 12, along with a sentence of 72 months on Counts 25–27, to run consecutively to the sentence on Counts 1–12, pursuant to 18 U.S.C. § 1028A(b)(4). However, the sentence was apportioned incorrectly as to Counts 1 through 12.
>
> To apportion the 151-month sentence on Counts 1 through 12 so that the sentence on no count exceeds the statutory maximum, the court will sentence Tellis to 31 months on Count 1, 120 months on Counts 2 through 12, to run concurrently with one another and

4

On November 11, 2018, Tellis, acting pro se, filed this § 2255 motion asserting the following claims:

1. Tellis's lawyer during pretrial proceedings and in negotiating the guilty plea he later withdrew, Richard B. White, rendered ineffective assistance of counsel by failing to "be present" when Tellis's proffer to the Government was "given illegally"; failing to advise Tellis of his rights under the plea deal so he could make "an informed decision that was voluntary"; and failing to "investigate and present exculpatory evidence."

2. Tellis's lawyer during pretrial and trial proceedings, Daniel G. Hamm, rendered ineffective assistance of counsel by failing to challenge the use of Tellis's proffer as evidence at trial; failing to move to suppress his "involuntary statements"; failing to challenge the Government's threat to use his proffer as trial evidence; failing to address "the ineffective actions" of White; and failing to "investigate exculpatory evidence as presented to pre-trial counsel."

3. Tellis's lawyer at sentencing and on appeal, Joseph Mitchell McGuire, rendered ineffective assistance of counsel by failing to prepare for sentencing and present evidence "brought to his attention by Petitioner"; failing to object to issues at sentencing and preserve them for appeal; failing to entertain other avenues of defense; failing to file a notice of

---

consecutively to Count 1, for a total of 151 months. This is in addition to the sentence Tellis received of 24 months on each of Counts 25 through 29, with Counts 25 through 27 running consecutively to one another for a total of 72 months, and Counts 28 and 29 running concurrently with each other and to Counts 25 through 27, resulting in a 72-month sentence, which runs consecutively to the sentence to be imposed on Counts 1 through 12. The resulting sentence will remain a sentence of 223 months.

Accordingly, *nunc pro tunc* to April 16, 2016, it is hereby ORDERED that the Defendant's sentence is imposed as follows:

31 months as to Count 1.
120 months as to each of Counts 2 through 12, to run concurrently with each other and consecutive as to Count 1.
24 months as to each of Counts 25 through 29.
Counts 25 through 27 are to run consecutively to each other.
Counts 28 and 29 are to run concurrently with each other and with Counts 25 through 27, with the 72 months to run consecutively to the sentence imposed on Counts 1 through 12.

Doc. 6-9 at 1–2.

5

appeal and consult with Tellis about the appeal; and failing to address
             issues on appeal as ordered by the Eleventh Circuit.

Doc. 1 at 4–7; Doc. 2 at 3–17.

## II.    DISCUSSION

### A.    General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B.    Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated under the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). An attorney is considered constitutionally ineffective if (1) his "performance was deficient" and (2) that "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is highly deferential, and the court indulges a strong presumption that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).

Under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the results of the proceeding fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.").

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* test, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *see Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To establish ineffective assistance

7

of appellate counsel, a movant must demonstrate "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker[.] Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

### 1. Ineffective Assistance of Counsel: Mr. White

Tellis claims that Richard B. White, the lawyer who represented him in pretrial proceedings and in negotiating the guilty plea he later withdrew, rendered ineffective assistance of counsel by failing to "be present" when Tellis's proffer to the Government was "given illegally"; failing to advise Tellis of his rights under the plea deal so he could make "an informed decision that was voluntary"; and failing to "investigate and present exculpatory evidence."[6] Doc. 1 at 4; Doc. 2 at 3–7.

According to Tellis, he was deprived of counsel at a critical stage of the proceedings because White was not present at the proffer sessions with the Government that took place before Tellis agreed to plead guilty and testify to the grand jury about his and others' involvement in the tax-refund scheme. Doc. 2 at 3–4, 6. Tellis maintains that White also misadvised him about the terms of the plea agreement, including the length of the sentence he would receive. *Id*. at 4–5. Tellis further argues that White's deficient performance during plea negotiations led him to make self-incriminating statements in his proffer and

---

[6] Tellis does not specify the exculpatory evidence that White allegedly failed to investigate and present. His cursory assertion here entitles him to no relief.

in his grand jury testimony. *Id*. He contends that this ultimately resulted in depriving him of his right to testify when he went to trial, because, he says, his proffer statements and grand jury testimony could have been used against him if he testified at trial, which he opted not to do. *Id*.

The record reflects that White was not present at a first scheduled proffer session in June 2013, but that White sent his law partner, Bradford Griffin, to represent Tellis at the session. Crim Doc. 132 at 3–4; Crim. Doc. 248 at 74–77. The Government stopped the session without taking a proffer from Tellis and informed him it would reschedule the proffer for a date when White was available. Crim. Doc. 248 at 22–23, 184–85. The second proffer session took place in July 2013 at White's office, with White present. Crim Doc. 132 at 4. At that session, Tellis gave a proffer admitting his involvement in the tax-refund scheme and agreed to testify before a grand jury. Crim. Doc. 212 at 4; Crim. Doc. 248 at 33. The Government later emailed White a draft of a proposed plea agreement requesting that Tellis testify before the grand jury as part of his cooperation. Crim. Doc. 248 at 142. Tellis testified before the grand jury and admitted his part in the tax-refund scheme.[7] Crim. Doc. 212 at 4; Crim. Doc. 248 at 42.

Tellis cannot show that he was prejudiced by the actions of White about which he complains. Even assuming White performed deficiently during pretrial proceedings and in plea negotiations and that White misadvised Tellis about the length of the sentence he would receive under the plea agreement, any deficient performance did not result in

---

[7] The indictment was returned before any contact took place between the Government's attorneys and White and several months before Tellis proffered and then testified before the grand jury.

9

prejudice. Tellis was allowed to withdraw his guilty plea and obtain new counsel, and then he received the same plea offer from the Government made when White was his counsel. However, Tellis rejected the reoffered plea deal and opted to go to trial. Tellis can point to no other plea offer by the Government, or one he might otherwise have obtained, had White's performance not been professionally deficient. With White as his counsel, he accepted the plea offer the Government was willing to make and pled guilty. Through new counsel, he withdrew his guilty plea, rejected the Government's reoffer of the same plea deal, and elected to proceed to trial. Tellis's apparent insinuation that the Government's actual plea offer was not the best he could do fails to create an inference that another, more favorable, plea offer was obtainable. A petitioner fails to establish that he was prejudiced by his counsel's failure to negotiate a more favorable plea agreement with nothing more than a bald suggestion that such an agreement might have been possible. *See Cummings v. United States*, 2013 WL 2422889, at *8 (S.D. Ga. June 3, 2013).

Tellis also fails to demonstrate he was prejudiced by participating in proffer sessions and testifying before the grand jury on White's advice. The Government did not use Tellis's proffer statements or grand jury testimony at his trial, so the petit jury did not hear his statements or testimony. As for Tellis's claim that White's advice ultimately deprived him of his right to testify at trial, the record shows that the Government informed Tellis's trial counsel Daniel G. Hamm, who informed Tellis, that the Government would not use Tellis's proffer statements or grand jury testimony in presenting its case-in-chief, but that the Government reserved the right to use the statements and testimony—as prior inconsistent statements for impeachment purposes—if Tellis took the stand and gave testimony with

10

assertions inconsistent with his proffer statements or grand jury testimony. Crim. Doc. 221 at 14–15, 21–22. As the Government argues in its response to Tellis's § 2255 motion, Tellis's claim that he was deprived of his right to testify amounts to an argument that White's actions created conditions that prevented him from later taking the stand at trial and committing perjury, by giving testimony contrary to his prior statements, without being challenged. "Whatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying falsely." *Nix v. Whiteside*, 475 U.S. 157, 173 (1986); *see also Harris v. New York*, 401 U.S. 222, 225 (1971) ("Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury.").

In *Harris*, the defendant made incriminating statements to police, but those statements were inadmissible under *Miranda v. Arizona*, 384 U.S. 436 (1966). *Harris,* 401 U.S. at 223–24. The prosecution did not use the defendant's statements in its case-in-chief, but used those statements to impeach the defendant who took the stand. *Id*. The Supreme Court held that "the shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Id*. at 226.

As previously indicated, *Strickland*'s prejudice prong focuses on more than outcomes. A petitioner seeking to establish prejudice must show that his counsel's deficient performance rendered the results of the proceeding fundamentally unfair or unreliable. *Lockhart*, 506 U.S. at 369. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which

11

the law entitles him." *Id*. at 372. Tellis had no substantive or procedural right to perjure himself. Moreover, Tellis fails to show that the testimony he would have given had he taken the stand at trial was materially different from his proffer statements or grand jury testimony, such that he would have opened the door to admission of his prior statements or testimony.[8] And if it is his contention that his trial testimony would have been materially different from his prior statements and testimony, he cannot predicate his claim of ineffective assistance of counsel on an assertion that White's actions prevented him from taking the stand and committing perjury with no fear of confrontation with his prior inconsistent statements. *See Harris,* 401 U.S. at 223–26.

Finally, Tellis has not proffered the trial testimony he was allegedly prevented from giving. For this reason, too, Tellis fails to show he was prejudiced from the alleged denial of his right to testify. Even in the context of a denial of the right to testify, a defendant who establishes the performance prong of the *Strickland* analysis must still demonstrate prejudice by showing there is a reasonable probability that the results of the proceeding would have been different. *Fishbone v. Sec'y for Dep't. of Corrs*., 165 F. App'x. 800, 801 (11th Cir. 2006) (citing *Strickland*). Because Tellis fails to establish prejudice under the *Strickland* standard, he is entitled to no relief on his claims alleging White rendered ineffective assistance of counsel.

---

[8] The Court points out again that the Government did not use Tellis's proffer statements or grand jury testimony in presenting its case-in-chief and agreed not to use the statements and testimony unless Tellis took the stand and gave testimony inconsistent with his proffer statements and prior testimony.

12

## 2. Ineffective Assistance of Counsel: Mr. Hamm

Tellis claims that Daniel G. Hamm, the lawyer who represented him in pretrial and trial proceedings, rendered ineffective assistance of counsel by failing to challenge the use of Tellis's proffer statements as evidence at trial; failing to move to suppress his "involuntary statements" (i.e., his proffer statements and grand jury testimony); failing to challenge the Government's threat to use his proffer statements and grand jury testimony as trial evidence; failing to address "the ineffective actions" of White; and failing to "investigate exculpatory evidence as presented to pre-trial counsel." Doc. 1 at 5; Doc. 2 at 7–11.

As discussed above, prior to trial, the Government informed Hamm and Tellis that the Government would not use Tellis's proffer statements or grand jury testimony in presenting its case-in-chief at trial, but that it reserved the right to use the statements and testimony—as prior inconsistent statements for impeachment—if Tellis took the stand at trial and gave testimony inconsistent with his proffer statements or grand jury testimony. Crim. Doc. 221 at 14–15, 21–22. The Government did not offer any of Tellis's proffer statements or grand jury testimony at trial. Any attempt by Hamm to suppress Tellis's proffer statements or grand jury testimony for use by the Government for impeaching Tellis if he gave trial testimony inconsistent with his prior statements or testimony would have been unavailing, as the statements and testimony were admissible for impeachment. *See Harris*, 401 U.S. at 223–26. Thus, Tellis fails to demonstrate deficient performance by Hamm. Counsel is not ineffective for failing to raise a meritless issue. *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

13

Nor does Tellis demonstrate any prejudice. A suppression motion on the ground urged by Tellis would not have succeeded. Tellis's proffer statements and grand jury testimony were not offered at trial and thus were not heard by the jury. And, as discussed in addressing Tellis's claims against White, Tellis fails to demonstrate that his right to testify in his own defense was violated under the circumstances of his case.[9]

Finally, Tellis does not explain how he was prejudiced by Hamm's alleged failure to address "the ineffective actions" of White, and he does not identify the exculpatory evidence Hamm failed to investigate or show how he was prejudiced by Hamm's alleged failure to investigate these matters. Tellis is entitled to no relief on his claims alleging ineffective assistance of counsel against Hamm.

### 3.     Ineffective Assistance of Counsel: Mr. McGuire

Tellis claims Joseph Mitchell McGuire, the lawyer who represented him at sentencing and on appeal, rendered ineffective assistance of counsel by failing to prepare for sentencing and present evidence "brought to his attention by Petitioner"; failing to object to issues at sentencing and preserve them for appeal; failing to entertain other avenues of defense; failing to file a notice of appeal and consult with Tellis about the

---

[9] Tellis also suggests that, had he been made aware at an earlier point in his representation by Hamm of the possible use of his proffer statement and grand jury testimony for impeachment at trial, he would have reconsidered the plea offer extended (for a second time) by the Government. Doc. 2 at 8. It is clear from the record that, prior to his trial, Tellis was repeatedly warned about the possible uses of his prior statements and testimony should he proceed to trial and give conflicting testimony, and that Tellis persisted in his demand to proceed to trial, rather than accept a plea offer, even after he was thoroughly advised on this matter. *See* Crim Doc. 221 at 14–24; Doc. 9-1 at 1.

appeal; and failing to address issues on appeal as ordered by the Eleventh Circuit. Doc. 1 at 6–7; Doc. 2 at 11–17.

As for his claim that McGuire was ineffective at sentencing and for failing to preserve issues for appeal, Tellis does not explain how McGuire was ineffective in this regard. He identifies no issues that McGuire should have preserved for appeal. His conclusory allegations here entitle him to no relief.[10]

There is no factual basis for Tellis's claim that McGuire failed to file a notice of appeal. McGuire filed timely notice of appeal on April 29, 2015. Doc. 6-1 at 1–2.

As for McGuire's performance on appeal, Tellis asserts that McGuire: (1) filed an *Anders* brief that incorrectly stated he reviewed the full record in Tellis's case; (2) neglected to obtain and submit all transcripts from proceedings in the district court; (3) failed to address the merits of plausible issues raised by Tellis in a pro se brief filed with the appellate court; and (4) failed to notify Tellis of filings with the appellate court. Doc. 2 at 11–16. Tellis does not show he was prejudiced by these matters.

The record reflects that, after the Eleventh Circuit advised McGuire that he had failed to submit all transcripts from Tellis's district court proceedings and that his *Anders* brief therefore had not been filed after the required review of the full record (Doc. 6-3), McGuire submitted all transcripts not previously submitted and then filed an *Anders* brief considering the full record (Doc. 6-4). In the resubmitted *Anders* brief, McGuire discussed any possible irregularities in Tellis's district court proceedings and concluded there were

---

[10] Tellis does not elaborate upon the "other avenues of defense" McGuire should have pursued. His assertions in this regard entitle him to no relief.

15

no meritorious issues that could, in good faith, be argued on Tellis's behalf. Doc. 6-4. In compliance with an order of the Eleventh Circuit, McGuire also drafted and filed a merits brief addressing a possible error in Tellis's sentence. Doc. 6-8.

The claim Tellis particularly focuses on in his § 2255 motion involves the previously discussed claim of the potential admissibility of his proffer statements and grand jury testimony. But that claim, as discussed above, is not meritorious. *See also* Doc. 6-4 at 14–15; Doc. 6-8. Consequently, McGuire was not ineffective for failing to argue the issue on appeal.

Finally, the record shows that Tellis responded to McGuire's filings with the Eleventh Circuit. Docs. 6-5, 6-6. Thus, in the end, the record reflects that McGuire submitted documents to the appellate court, was instructed by that court to correct something, and then made that correction. McGuire informed the appellate court that he saw no meritorious issues on appeal, and he has reiterated that same position in an affidavit filed with this Court. Doc. 6. Tellis demonstrates no prejudice under the *Strickland* standard.

For the reasons discussed, Tellis is entitled to no relief on his claims against McGuire alleging ineffective assistance of counsel.

### III. CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that the Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 be DENIED and that this case be DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation by **January 3, 2022**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 20th day of December, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE